# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.S., A Minor, and | : | No. 3:10cv1610 |
| R.P., Individually and as Parent | : | |
| and Natural Guardian of J.S., | : | (Judge Munley) |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| LAKELAND SCHOOL DISTRICT, | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendant's motion to dismiss the instant complaint. Having been fully briefed, the matter is ripe for disposition.

## Background

This case arises from disputes about the means for providing Plaintiff J.S., a minor student with a disability, a Free and Appropriate Public Education ("FAPE"). J.S. is a special education student who resides in Defendant Lakeland School District. (Complaint (Doc. 1) (hereinafter "Complt.") at ¶ 14). This year, J.S. is a fourth-grade student. (Id. at ¶ 15). During the 2008 and 2009-10 school years, J.S. attended school at the Mid-Valley partial hospitalization program. (Id. at ¶ 16). That program is administered by the Northeastern (Pa.) Intermediate Unit and Northwest Human Services. (Id.). J.S.'s parent, Plaintiff R.P. eventually requested a special education due process hearing. (Id. at ¶ 17). R.P. alleged that J.S. had been denied a FAPE in the least restrictive setting. (Id.). This special education due

process administrative hearing took place on January 5, March 11-12 and April 15, 2010.  (Id. at ¶ 18).  The purpose of the hearing was to determine whether the district denied J.S. special education services.  (Id. at 19).

The hearing officer issued a decision on May 10, 2010.  (Id. at ¶ 19).  The hearing officer ordered the school district to "'convene student's I[ndividualized] E[ducation] P[lan] within 15 days . . . to consider and assess, in consultation with Student's treatment team," whether student could participate in certain programs. (Id. at ¶ 20).  The plaintiffs allege that the school district failed to carry out this order. (Id. at ¶ 21).

Plaintiffs also point to several alleged "'errors'" in the hearing officer's decision. First, plaintiff contends that "the hearing officer erroneously concluded that J.S. 'does not suggest that the partial hospitalization program failed to address Student's behavioral and emotional needs,'" when J.S. had made such claims during the hearing and in his written closing statement.  (Id. at ¶¶ 22-24).  Second, plaintiffs contend that the hearing officer erred in concluding that the evidence in the case established that the J.S.'s "'behavioral and emotional needs were and are throughly and systematically addressed in the therapeutic component of the partial hospitalization program,'" and that the school district had fulfilled its obligations to support J.S. in this program.  (Id. at ¶ 25).  Third, plaintiffs insist that the hearing officer's decision did not address their concern that the J.S.'s deficits in adaptive and social skills had not been addressed.  (Id. at ¶ 26).  Fourth, plaintiffs alleged that the

hearing officer erred in finding that the district had provided adequate behavioral and emotional support, as well as support for social skills and adaptive skills. (Id. at ¶ 27). Plaintiffs point to several failings by the hearing officer to consider evidence in the record that would support their claims on this matter. (Id.). Fifth, plaintiffs contend that the hearing officer failed to provide a remedy for violations of the requirement that plaintiff be subjected to the least restrictive environment ("LRE"). They also point to several pieces of evidence which allegedly support these claims. (Id.).

Plaintiffs filed the instant complaint in this court on August 3, 2010. The complaint contains seven counts. Count I alleges that defendant was "delibertaely indifferent" in failing to provide J.S. with a FAPE in violation of the Rehabilitation Act ("RA") , 29 U.S.C. § 794(a). Count II complains that defendant violated the Rehabilitation Act by segregating J.S. based on his disability. Count III alleges that defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and 42 U.S.C. § 1983 by failing to provide J.S. with necessary services because of his disability. Count IV alleges that defendant violated J.S.'s rights under 42 U.S.C. § 1983, the Fourteenth Amendment, the Rehabilitation Act and the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400, by failing to implement the order of a hearing officer. Plaintiffs also allege that defendant violated J.S.'s constitutional rights to due process and equal protection. Count V appeals the hearing officer's decision that J.S. was not entitled to compensatory education under

the Rehabilitation Act. Count VI appeals the hearing officer's decision that J.S. was not entitled to compensatory education because his right to the least restrictive environment had not been violated. Count VII seeks attorney's fees under the IDEA and Rehabilitation Act.

After plaintiff served the complaint, defendant filed the instant motion to dismiss. The parties briefed the issues, bringing the case to its present posture.

**Jurisdiction**

Plaintiff brings its claim pursuant to 42 U.S.C. § 1983 and other federal statutes. The court therefore has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

Defendant has filed a motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When a defendant files a motion pursuant to Rule 12(b)(6), all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curiam)). The court may also consider "matters of public record, orders, exhibits attached to the

4

complaint and items appearing in the record of the case." <u>Oshiver v. Levin,</u>

<u>Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations

omitted).  The court does not have to accept legal conclusions or unwarranted

factual inferences.  <u>See</u> <u>Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.</u>,

450 F.3d 130, 133 (3d Cir. 2006) (citing <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d

902, 906 (3d Cir. 1997)).

**Discussion**

Defendant raises several grounds for granting their motion to dismiss.  The

court will address those grounds in turn.

As a preliminary matter, the court notes that "[i]n 1975 Congress provided that

it would make funds available for state special education programs on the condition

that states implement policies assuring a 'free appropriate public education' for all

their disabled children." <u>Susan N. v. Wilson Sch. Dist.</u>, 70 F.3d 751, 755-56 (3d Cir.

1995) (quoting 20 U.S.C. ¶ 1412(1)).  The Individuals with Disabilities in Education

Act (IDEA) thus mandates an education for disabled children that "'consists of

educational instruction specifically designed to meet the unique needs of the

handicapped child, supported by such services as are necessary to permit the child

'to benefit' from the instruction." <u>Id.</u> at 756 (quoting <u>W.B. v. Matual</u>, 67 F.3d 484, 491

(3d Cir. 1995)).  The IDEA implements this mandate through the creation of an

"Individual Education Program ("IEP"), for each child classified as disabled." <u>Id.</u>

These IEPs contain "a specific statement of a student's present abilities, goals of

improvement, services designed to meet those goals, and a timetable for reaching the goals via the services." Id. While special services are available to such students, "[t]o the extent possible, however, a school must 'mainstream' disabled students–that is, instruct them in a regular, not special, education setting." Id. (quoting 20 U.S.C. ¶ 1412(5)).

Parents have a variety of procedural rights under the IDEA: they "may examine all relevant records concerning evaluation and placement of their children"; "must receive prior written notice when a school proposes or refuses to alter a placement; "may contest in an impartial due process hearing decisions regarding the evaluation of their child or the appropriateness of the child's program"; "may appeal the decision from such a hearing to the state education agency"; and "may obtain judicial review of the administrative decision." Id. The case involves, in part, such a review of an administrative decision, as well as other statutory and constitutional claims related to the provision of education for J.S., a disabled student.

### A. Claims under the Rehabilitation Act and the ADA in Counts I, II and III

Defendant argues that plaintiff's claims brought pursuant to the Rehabilitation Act and the ADA should be dismissed. Plaintiffs have alleged that J.S. was disabled and denied services, but they have not alleged that these denials were motivated by J.S.'s disability.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be

excluded from participation in, be denied the benefits of, or be subjected discrimination under any program or activity" funded by the federal government. 29 U.S.C. § 794(a). The ADA also prohibits discrimination because of disability. The Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Like the RA, the ADA "[has] been interpreted to prevent students with disabilities from being denied a free appropriate public education by a school district." J.L. v. Ambridge Area Sch. Dist., 622 F. Supp. 2d 257, (W.D. Pa. 2008) (citing Ridgewood, 172 F.3d at 253). The ADA "extends the nondiscrimination rule of section 504 of the Rehabilitation Act to services provided by any 'public entity' (without regard to whether the entity is a recipient of federal funds)." Jeremy H. v. Mount Leb. Sch. Dist., 95 F.3d 272, 279 (3d Cir. 1996) (quoting 42 U.S.C. § 12132).

Courts have found that "'the remedies, procedures, and rights set forth in [the RA] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title.'" Jeremy H., 95 F.3d 279 (quoting 42 U.S. § 12133). In other words, "[w]hether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same." McDonald v. Pennsylvania, 62 F.3d 92, 95 (3d Cir. 1995). "To prevail on a violation of either of

these statutes," a plaintiff must show he "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.2d 176, 189 (3d Cir. 2009).

Here, the defendant concedes that plaintiffs have alleged the first two elements of such a claim, but contends they have not alleged that J.S. suffered discrimination because of his disability. The plaintiffs allege discrimination in defendant's failure to provide J.S. with a FAPE. Courts in this circuit have concluded that "'the failure to provide a free appropriate public education violates IDEA and therefore could violate [the RA]." Id. (quoting Ridgewood, 172 F.3d at 253). The court reads plaintiffs' allegation to be that J.S. suffered from a disability, and that defendant discriminated against him by failing to provide him with the services for persons with disabilities required under the law. Based on these allegations, there would have been no discrimination if plaintiff had not been disabled. The plaintiffs' allegations, therefore, are that defendant discriminated against him because of his disability. The court will therefore deny the motion on these grounds.

**B. Claims in Counts III and IV Brought Pursuant to Section 1983**

Defendant next seeks dismissal of those claims in Counts III and IV that plaintiffs bring pursuant to 42 U.S.C. § 1983. Because Congress intended the IDEA, ADA and Rehabilitation Act to be the sole means to remedy violations of those provisions, plaintiff's cannot use Section 1983 for that purpose. Plaintiffs agree that

8

they cannot bring claims for violations of the IDEA, ADA and RA through Section 1983 and do not oppose dismissal on those grounds. As such, the court will grant that portion of the motion as unopposed. To the extent that plaintiffs attempt to enforce the IDEA, RA and ADA through Section 1983, those claims are dismissed.

### C. Fourteenth Amendment Claims in Count IV

Defendant argues that plaintiffs' Fourteenth Amendment claims in Count IV should be dismissed. Whether those claims are brought pursuant to procedural or substantive due process, they insist that plaintiff has failed to identify any fundamental right violated by defendant's conduct. As such, plaintiffs cannot make out a due process claim. Plaintiffs agree that they have not alleged any violation of substantive due process rights, but insist they have stated a procedural due process claim.

"To prevail 'on a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide due process of law.'" Chambers, 587 F.3d at 194 (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006)). A court must "'first determine whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property.'" Id. (quoting Baraka v. McGreevey, 481 F.3d 187, 205 (3d Cir. 2007)). Courts recognized that "[p]roperty interests are 'created and their

9

dimensions defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Id. at 194-95 (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)).  To have a protected property interest "in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.'" Id. (quoting Roth, 408 U.S. at 577).

"[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" Loudermill, 470 U.S. at 541 (quoting Morrisey v. Brewer, 408 U.S. 471, 481 (1972)).  Courts have found that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances.'" Matthews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961)).  Instead, courts are to inquire into the circumstances of the deprivation to determine what process is required.  Id.  Accordingly, "'[consideration] of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.'" Wolff v. McDaniel, 418 U.S. 539, 560 (1974) (quoting McElroy, 367 U.S. at 895).  Three factors generally guide this determination: "First, the private interest that will be affected by the official action;

second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Matthews, 424 U.S. at 335. The Third Circuit Court of appeals has concluded that "[a]t a minimum, due process requires notice and a hearing." Wilson v. MVM, Inc., 475 F.3d 166, 178 (3d Cir. 2007). Still, "when that notice and hearing must be provided and how intensive the hearing must be is a determination that depends on the balancing of [the] three interests" articulated in Matthews. Id.

Defendant argues that plaintiffs have not alleged that they suffered a deprivation of a protected property interest, and that even if they had, they have not alleged they were denied process before that deprivation. Plaintiffs maintain that they have alleged a deprivation of a protected interest. They also insist that they "clearly asserted that they availed themselves to special education due process hearing procedures under the IDEA, RA and ADA," but that the district "failed to carry out the order by hearing officer."

The court will grant the motion on this point. Regardless of whether plaintiffs have alleged that defendant deprived them of a protected property interest, plaintiffs admit that they received process before that deprivation. Plaintiffs' complaint is not with the lack of process they experienced before losing their property, but instead

with the district's later failure to implement the decision of the hearing officer.

Indeed, plaintiffs admit that they received a hearing, and they do not contend that

this hearing was inadequate or insufficient in any way. Complaints about

implementing the hearing officer's decision do not constitute complaints about the

process itself. As such, the court will grant the motion as it relates to plaintiffs'

procedural due process claim.

### D. Equal Protection

Defendant also argues that plaintiffs' equal protection claim in Count IV should

be dismissed. Plaintiffs have not alleged that J.S. faced treatment dissimilar from

similarly situated individuals, and have not alleged purposeful discrimination. They

have only alleged that the district failed to implement the hearing officer's decision.

Plaintiffs insist that they have alleged purposeful discrimination outside the context of

the IDEA, and that defendant treated J.S. differently from other similarly situated

individuals.

"To bring a successful claim under 42 U.S.C. § 1983 for denial of equal

protection, plaintiffs must prove the existence of purposeful discrimination." Andrews

v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990). Further, the plaintiff

must allege that he "'received different treatment from that received by other

individuals similarly situated.'" Id. (quoting Kuhar v. Greensburg-Salem School Dist.,

616 F.2d 676, 677 n.1 (3d Cir. 1980)). In the context of disability discrimination in

education, a plaintiff must allege a violation of constitutional rights, not rights

established by the IDEA, in order to maintain a separate Section 1983 claim. <u>A.W.</u> <u>v. Jersey City Public Sch.</u>, 486 F.3d 791, 803 (3d Cir. 2007); <u>see also</u> <u>James S. v.</u> <u>Sch. Dist.</u>, 559 F. Supp. 2d 600, 624 (E.D. Pa. 2008) ("Although <u>A.W.</u> eliminated resort to § 1983 as a tool for enforcing IDEA and Section 504 [RA] claims, the decision did not eliminate the availability of § 1983 as a mechanism for asserting disability claims predicated on constitutional violations.").

The court will deny the motion on this point. Reading the complaint as broadly as possible, the court concludes that plaintiffs have alleged that the defendant violated J.S.'s equal protection rights by treating him dissimilarly from other, similarly situated individuals. The plaintiffs allege that "[t]he school district treated J.S. dissimilarly to other students" by refusing him to provide him with services and programs. (Complt. at ¶ 51). Such failings meant that, unlike other students at his school, he could not participate in educational programming. Plaintiffs claim, therefore, is that defendant purposefully discriminated against J.S., and that such discrimination denied him the education that other similarly situated individuals–students–received. <u>See</u> <u>James S.</u>, 559 F. Supp. at 626 (denying motion to dismiss equal protection claims because plaintiff "specifically allege[d] that the District's treatment of James deprived him of equal access to the education granted to children without disabilities.").

### E. Hearing Officer's Decision

Defendant contends that plaintiffs' claim seeking a reversal of the hearing

officer's decision should be dismissed.  Plaintiffs have not alleged any errors that should lead to reversal of the decision, but instead only argue about the hearing officer's interpretation of the facts.  Since the court's role here is not to review the hearing officer's interpretation of the facts, the court cannot overturn the officer's decision.

The IDEA provides aggrieved parents with the right to judicial review of administrative decisions regarding their children.  Susan N., 70 F.3d at 757.  A court undertaking such a review "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  Id.  In reviewing the administrative decision, courts are not "free to substitute their own notions of sound education policy for those of the educational agencies they review."  Id.  Instead, courts must "give 'due weight' to the administrative proceedings."  Id. (quoting Board of Educ. v. Rowley, 458 U.S. 176, 205-206 (1982).  Thus, "[w]hen considering an appeal from a state administrative decision under the IDEA, district courts apply a nontraditional standard of review, sometimes referred to as 'modified de novo' review."  D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir. 2010). In this context, "due weight" means that "'[f]actual findings from the administrative proceedings are to be considered prima facie correct,' and if the reviewing court does not adhere to those findings, it is 'obliged to explain why.'"  Id. (quoting Rowley, 458 U.S. at 206).  After undertaking such review,

"a district court is authorized to make findings based on a the preponderance of the evidence and grant the relief it deems appropriate, including an award of attorney's fees, a requirement for reimbursement for a private educational placement, and a direction for the provision of compulsory education." Id.

The court will deny the motion on this point. The court denies the motion in part because the motion is premature; the court has not yet had an opportunity to review the record and compare the hearing officer's decision to the record. Parents have a statutory right to seek review of the administrative decision in their child's case, and J.S.'s parents here seek such review. Second, the court denies the motion because the standard of review, as summarized above, does not require the court to accept as true all of the facts found by the hearing officer. Instead, the court must provide reasons from any conclusion that the facts found by the officer were in error. Defendant complains that plaintiffs have alleged only errors of fact by the hearing officer, and that such alleged errors would not be a basis to overturn the decision. The court disagrees, and the motion will be denied on this point.

**F. Attorney's Fees**

Defendant argues that plaintiffs cannot prevail on their claim for attorney's fees related to the administrative hearing. Plaintiffs were not the prevailing party at that hearing, and they therefore cannot recover attorney's fees.

The IDEA provides that "in any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of

the costs (I) to a prevailing party who is the parent of a child with a disability." 20 U.S.C. ¶ 1415(i)(3)(B)(i)(I).  Thus, the IDEA "contains a specific provision authorizing an order for [attorney's] fees as 'part of the costs to the parents of a child with a disability who is the prevailing party.'" P.N. v. Clementon Bd. of Educ., 442 F.3d 848, (3d Cir. 2006) (quoting J.O. v. Orange Twp. Bd. or Educ., 287 F.3d 267, 271 (3d Cir. 2002)).  In the context of the IDEA, "'a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Id. at 855 (quoting Farrar v. Hobby, 506 U.S. 103, 111-12 (1992)).

Defendant contends that plaintiffs were not the prevailing party at the administrative hearing.  In evaluating J.S.'s treatment and educational program, the hearing officer found that the school district had been too deferential to J.S.'s treatment team "on what if any academic classes Student could attend with non-disabled peers." (Exh. A to Complt. at 12).  This excessive deference, the officer found, "constitutes a violation of the requirement in the IDEA that Student be included to the 'maximum extent possible.'" (Id.).  As relief for this violation, the hearing officer directed that "the IEP team, including the parent, convene within 15 days and, in consultation with Student's treatment team, give full consideration to the relevant factors for determining the extent of Student's participation with non-disabled peers, including the full range of supplementary aids and services." (Id. at 13).  The IEP team was also to "ensure that Student is included for art class if that

has not yet been accomplished." (Id.).

Here, then, the hearing officer directed that the parent and school officials meet and to determine whether J.S. should be included in programs from which he was formerly excluded. The hearing officer also determined that the district should make sure that J.S. was included in art classes. The court finds that such directives materially altered the relationship between the parties. The defendant was required to change its behavior, meet with J.S.'s parent and reassess his inclusion in particular classes. Such meetings were not previously schedule and were requried by the officer's decision. Thus, the legal relationship between the parties changed. To the extent that the purpose of the IDEA (and educational policy) is to include disabled students in as much "regular" schooling as possible, and to the extent that J.S. desired such inclusion, such an alteration in the relations between the parties benefitted the plaintiffs. As such, attorneys fees are appropriate in this instance, and the court will deny defendant's motion on these grounds.

### G.  Money Damages

Finally, defendant contends that plaintiffs cannot claim money damages in this action pursuant to 42 U.S.C. § 1983. Citing to case law that discusses the relationship between the IDEA, the RA and Section 1983, defendant argues that the presence of an IDEA or an RA claim prevents a plaintiff from seeking compensatory damages in claims brought pursuant to Section 1983.

Defendant cites to A.W. v. Jersey City Pub. Sch., 486 F.3d 791 (3d Cir. 2007).

In A.W., the court explored whether a plaintiff could bring a cause of action pursuant to Section 1983 to enforce the rights established in the IDEA and the RA. The court examined cases that discussed the relationship between Section 1983 and other remedial statutes, noting that the Supreme Court had determined "that to sustain a § 1983 action for the violation of a statutory right, a plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs." A.W., 486 F.3d at 801. Making such a "demonstration creates a rebuttable presumption that the right is enforceable under § 1983." Id. A defendant can overcome that presumption, however, by showing that Congress did not intend plaintiffs to use Section 1983 to enforce the right. Id. "'[E]vidence of such congressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" Id. (quoting Rancho Palos Verdes v. Abrams, 544 U.S. 113, 120 (2005)).

The court then examined the provisions of the IDEA and concluded that Congress had created a "comprehensive [enforcement] scheme." Id. at 803. As such, the court found, "Congress did not intend § 1983 to be available to remedy violations of the IDEA such as those alleged" by plaintiff. Id. Similarly, the court concluded "§ 1983 is not available to provide a remedy for defendants' alleged

violations" of plaintiff's rights under the RA.  Id. at 806.[1]

The court agrees with the defendant that plaintiffs could not use Section 1983 to remedy violations of the IDEA, RA or ADA.  As such, none of the remedies available under Section 1983 are available to the plaintiffs for violation of those acts. To the extent that plaintiff brings claims pursuant to Section 1983 that are not based on violations of those acts, however, plaintiffs can obviously seek the remedies available to them under that section.  The court has determined that plaintiff has stated a claim for a violation of his right to equal protection pursuant to Section 1983. The plaintiff may, therefore, seek the damages available under Section 1983 for that claim.  The court will therefore deny the motion on those grounds.

## Conclusion

For the reasons stated above, the court will grant defendant's motion in part and deny the motion in part.  The court will dismiss plaintiffs' Section 1983 claims that are brought for violations of the ADA, IDEA and RA. The court will also dismiss plaintiffs' Due Process claims.  The court will deny the motion in all other respects. An appropriate order follows.

---

[1]The defendant also maintains that plaintiff's ADA claims are likewise precluded by this doctrine, since the RA and the ADA are enforced according to the same legal standards.  As explained above, the court agrees with this contention.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **J.S., A Minor, and** | : | **No. 3:10cv1610** |
| **R.P., Individually and as Parent** | : | |
| **and Natural Guardian of J.S.,** | : | **(Judge Munley)** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LAKELAND SCHOOL DISTRICT,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

**AND NOW,** to wit, this 14th day of February 2011, the defendants' motion to dismiss the complaint (Doc. 4) is hereby **GRANTED** in part and **DENIED** in part, as follows:

1. The motion is **GRANTED** with respect to plaintiffs' claims for violations of the Individuals with Disabilities in Education Act (IDEA), the Rehabilitation Act (RA) and the Americans with Disabilities Act (ADA) brought pursuant to Section 1983 in Counts III and IV;

2. The motion is **GRANTED** with respect to plaintiffs' due process claims in Count IV; and

3. The motion is **DENIED** in all other respects.

BY THE COURT:

s/ James M. Munley
JUDGE JAMES M. MUNLEY
UNITED STATES DISTRICT COURT